Good morning, Your Honor. My name is Roy Cattriel, counsel for Plaintiff and Appellant Lisa Bodenburg in the putative class. And I'd like to reserve four minutes of my time for rebuttal. We'll try to help you, but watch the clock, please. Thank you. And apropos time allocation, if during the course of this argument, Your Honor has become so engaged with my argument that you say that we will allocate you additional time of five minutes, I would understand. That's not going to happen. I was going to say, you got the wrong presiding judge for that. Fair enough. But if Your Honor... If you could start by letting me know for sure. It's my understanding you agree that the iCloud legal agreement here is unambiguous. That is our position, yes, Your Honor. So if it's unambiguous, then the court just reads the language of the agreement and determines what it says, correct? That is true. And then it seems to me that we are looking for the objective intent of the language as evidenced by words rather than the subjective intent of the parties, correct?  In California. Well, I want to make sure because whole Idaho does it our own way, and so I want to make sure I'm on the right. So and the interpretation of these words must get their ordinary and popular sense under California law. That is true as well. And we're really talking about the language, your account is allocated 5 GB of storage capacity as described in the iCloud feature pages. Additional storage is available for purchase as described below, correct? That is the heart of the contract case, yes. Well, under that phrase, it seems to me that Apple should have provided you with more or less supplemental storage in the amount, in addition to the amount that all counts are already given, right? That is exactly our position. You got the additional storage. You got 200 GB storage, which is 195 GB more than 5. So you got exactly what you were promised. Not quite, your honor, respectfully, because another. Well, if I'm reading the language of the contract as we just went through, I mean, I'll look at it and I say to myself, they say they should get additional storage. Additional says more. They got more. That's exactly what they were promised. Except that there's another section of the contract, section 3A, which we also highlight in our complaint and in our motion to dismiss, and that says how much more you are supposed to get. Section 3A, which is found at excerpts of record 131, says for details about plans and pricing, please visit this page. And that's the price page, which is incorporated into the contract. Well, but even there, doesn't it say that the language of the contract will provide additional storage, not an additional 200 GB of storage? Respectfully no, because I think. Where is the language which says they'll get an additional 200 GB of storage? I don't read that any place. Let me see if I can take you to the way we're reading it. Section 1C of the contract says that your account is automatically allocated 5 GB of  That's what it says. Additional storage is available for purchase. That means of necessity that the only thing you are purchasing is the more storage. If additional means more, then what that language says is, this is what's available for purchase. That's the way you interpret that. Yes, and we believe it's a reasonable interpretation. We believe that the. But it doesn't say you'll get an additional 200 GB. It just says additional. It says you can purchase additional storage and the amount of additional storage and the price at which you will purchase it is set forth in this page. And what that page tells you is that if you pay monthly 99 cents, you will get 50 GB of additional storage. The only thing that's available for sale and purchase is the additional storage. The 5 GB is yours all along. Does it say you'll get 50 GB additional storage? It says additional storage is available for purchase. But does it say 50 GB of additional storage is what you're buying? It doesn't say. No, it just lists a price list of the additional storage. And if additional means more, and the only thing that's available for sale and purchase is the more, then our contention is that's what you're purchasing. And let me, if I could illustrate this with an example, because after all, the words are to be given their ordinary meaning as understood in the daily lives. Counseled for Apple before the district court said, well, this is akin to having several different cellular plans. If you buy a phone, for $50 a month, you get 100 minutes. For $75 a month, you get 200 minutes. And so everybody would understand that you would get one or the other depending on which one you chose. And that's all well and good, but that's not what this language says. What this language says is that when I buy my phone, it comes preloaded with 100 minutes automatically. If you want additional minutes, you can purchase that for $39.99. And so if you want 200 additional minutes, you can purchase that for $39.99. But no one would understand, then, that that 200 minutes would be as a substitute to what's already preloaded on the phone. That was mine all along. And so I began this argument, or I attempted to, a little bit humorously, I hope, but I was making the point that if you were to say during the course of this argument that we will allocate you an additional 10 minutes of argument time because we've engaged you or so on, nobody would understand that that 10 minutes would then take away the 15 minutes of argument that I already had at the outset. It's additional. That's how the word is used in common parlance. And to buttress that point, it's not an argument of our own making because our complaint also referenced how players in the industry state that which Apple says should govern here. We posted an ad of Google. It's at paragraphs 33 and 34 of our complaint. And what Google says is you get 15 gigabytes of free storage for Google One. If you want to upgrade and get additional storage, you can pay $9.99 or $8.99. And then they say, and then your total storage will increase to 100 gigabytes. Apple is urging the same result in reading here, but the language that they used is different than that which Google used, which makes it expressly clear. Here I think we only, this was dismissed on the pleadings, which means all we have to advance is a plausible interpretation of the contract. We didn't draft this. This is the most sophisticated company on earth with a cadre of lawyers at their disposal, and this is how they chose to draft the contract. And so when we read it, we said, we all have five gigabytes. Now I'm purchasing more, which is what they mean, additional means. And the more that I'm purchasing is 200 gigabytes more. They're saying, no, no, no. When you purchase that 200 gigabytes, we took away the five. So now all you have is 200. What happened to the five I had before? Counsel, let me ask you this. Before the district court, you disputed that Rule 9 applies to the construction of the  Do you still dispute that? We dispute that. Rule 9B, I should say. 9B, correct. Pleading, pleading, heightened pleading with a particular. We don't think it applies to the breach of contract case. We think we do concede that it applies to the consumer protection statutes to the extent that they, they make a claim for deceptive. And to the degree it applies, how does that cut in this case? Well, I think that even if it were to, even if it were to apply to the breach of contract case, we singled out the specific sections of the contract that we are disputing, the language, the how. We also articulated and alleged the when, which is we bought and subscribed during every single month of the class period. Every single month is a new contract because you can change the amount of storage that you subscribe to. You can withhold payment, cancel, and rejoin any time. And so we, we pled the who, the what, when, where, and we, and that, so even if that were to apply to all counts, we maintain we've satisfied those. And even taking that a step further, even if we had not, if the court were so to hold, we could do so. And so dismissing with prejudice without granting us leave to amend to do that, if that were necessary, I think was also erroneous. And we would submit that at the very least we ought to be given that chance. Although we believe we don't, we shouldn't have to, we shouldn't have to because we've done so. And it doesn't apply to the breach of contract case. Now I think with respect to the ads, because I don't want to leave the court with a, a couple of points here. This is a fully integrated contract, a fully integrated contract in two occasions. The preamble to the contract, the very first section, is the one that Apple chose to be the only one that's all capitalized. It admonishes consumers that they should look to the contract and only to the contract and nothing else. Section 10C of the contract then has a full integration clause saying this supersedes anything else that we've told you before. The district court didn't do that. It went straight to the ads. Apple didn't do that. And that's not me saying it. You can scour the 23 pages of their motion to dismiss, and you know the amazing thing about that? They don't cite to one portion of the contract at all. They don't quote a single word of the contract. They go straight to the ads. And that's not an oversight. I think what that tells us is that Apple didn't believe when arguing in the motion to dismiss that the language of the contract is what they needed to get them there. They had to refer to the ads. Well, let, let me just summarize your answer to Judge Smith's question. And the question was, where in the agreement does it say additional 200 gigabytes? Okay. Your answer is it's in Section 3A plus the price page. Is that right? Almost. We start with 1C. Okay. 1C. It starts with 1C. 1C tells you the only thing that's available for purchase. Your account is automatically allocated 5 gigabytes of storage. And then the next sentence, what's available for purchase. Additional storage is available for purchase. And then, so the only thing that you can buy is that component which is additional. By that term, at least that's a reasonable interpretation we maintain. Now, to know how much additional, Section 3A says look at this price list. And that price list, since the only thing that's for sale, the only thing it could be offering, is how much of additional you get for what price. 50 gigabytes additional for 99 cents a month. I'm not sure I know exactly what language you're referring to in the ICLAB legal agreement that you believe is false or misleading. What specific language are you contending is false or misleading? Well, that language which I just alluded to, Section 1C, especially when put together with the price list at Section 3A because they're representing that what you're purchasing is more additional, the amount that you're purchasing. So what specific language? More additional? What is it? Well, they don't use more. They use additional. And by the way, our submission is additional doesn't just necessarily mean just more. It means in addition to. That's the dictionary definition. And it's not in addition to. They're not offering us that amount in addition to the 5 gigabytes. That's what Google does. But that's not what Apple does. They take away the 5 gigabytes. And that's the false or misleading. You said you wanted to save some time. I will. Thank you, Your Honor. I have four minutes. Thank you. Yeah. Well, not quite, but you have three minutes. I would ask one question before you sit down. Yes, Your Honor. Given what my good colleague, Judge Smith, talked to you about 9, Rule 9, it seems to me that Rule 9 would require a higher pleading standard. But not only that, but if we're looking at the parole evidence rule from California, that would be one part of the parole evidence rule would get in additional documents to the contract we have in front of us, wouldn't it not? Because under the parole evidence rule in California, one can get additional terms of the agreement in if there are circumstances invalidating the contract or voiding it or voidable or unenforceable, such as fraud or illegality. We can look at other parts, other things outside the contract, correct? That is certainly a correct recitation of law. My quarrel with that would be... Well, but honest truth is, if you have to plead misleading, which you do if you've got to get to the consumer protection claims, we certainly can look at other documents. You can certainly look at those, Your Honor. What I submit you cannot do, and what the cases, including the Whiteside v. Kimberly-Clark say, is that it would be error to look at it at the pleading stage in a doctrine of incorporation by reference where we don't get to submit contrary evidence. That is, those documents are taken as truthful, full stop, and then it's used to dismiss our complaint. Absolutely, we maintain that the parties should be given an opportunity to provide evidence, but evidence comes in through discovery. What the district court did here, which we submit was erroneous as it says... Well, what the district court did here is the district court said, I'm going to look at these documents, and then went through the procedure that they went through to try to get them in and look at them. And I'm just trying to understand your idea of the rule in California, because I know the rule in Idaho, but I want to make sure that I understand your interpretation of the California rule. Yes, but my submission would be that with respect to not only what I just said about it being improper to do so, to take it as truthful and not allow us to submit contrary evidence, which would have to happen in discovery, but also that insofar as the breach of contract case, we didn't plead a case for fraud in the inducement. This is a straight breach of contract. You promised X, you did Y. But if you're going to go to your UCL claims or your, if you will, consumer protection claims, you've got to have... It's got to be more than a mere possibility of misunderstanding, and it's got to come up with something. So it seems to me that those claims are fraud based, subject to Rule 9B. Correct. But the ad that we're alleging was fraudulent is the contract, because it's posted on the website. And I don't think it's an answer at the pleading stage, certainly, for Apple to say, well, whatever you think, however you think misleading this document is, if you were to look at some other document over here that we never provide a signal to, and we never tell you to look at, in fact, we tell you the opposite, say don't look anywhere else, then that would explain things. We don't think it explains, but that's their position. I don't know of any rule that says, if you're misleading in one ad, well, if you go to our 40th ad somewhere else, and we never signaled you to go there, then you would understand it, so you have no case. And that is essentially what we maintain happened here. I'm sorry to interrupt your time. Okay, we'll let you get to the time you had left before my colleague talked to you. Thank you. It's a great bonus. Thank you. All right, let's hear from Apple. Good morning. Matt Powers on behalf of Defendant Annapoli Apple, and may it please the Court. We would, I suspect I agree with the Court's interpretation of some of the issues here, so I'll try to keep this short. The trial court's order was entirely correct. All of the claims were properly dismissed. The contract language here, and in particular, the page from Apple's website that the plaintiffs themselves agree is part of the contract, it's the page they attached to their complaint that they call the price list, is unambiguous and cannot reasonably be read in the way that the appellants contend. And Judge Reyes, you asked where is the language additional 200 gigabytes. The answer is that language does not exist in any of the agreements or any portion of the agreements. And the assertion, at least in the papers, that the court, the trial court relied on the extrinsic evidence, and to be clear, the extrinsic evidence we're talking about here were simply images from Apple's website, the homepage on Apple's website for the very iCloud service that the plaintiffs were suing over. Those, we would submit that it is not, should not be controversial in any way to take judicial notice of the advertisements in a claim over a false, in a false advertising claim. But to be clear, the trial court did not rely on those homepages of Apple's iCloud service for purposes of her analysis of the contract. Her analysis was based, you can read it in the order, exclusively on the terms of service and then the portion of the website that everyone agreed was part of the contract. So if we just eliminate our look at those, and this is de novo review, then we haven't violated any rule, right? Correct. Correct. Can you give us any analogous case in which the district court deemed a website incorporated by reference under the circumstances? So that's an interesting question, Your Honor. The trial court here both took judicial notice of the documents because they met the requirements for judicial notice, publicly available, not subject to dispute. This isn't a case where there's some dispute as to whether these were authentic or covered the right time period, those kinds of things. Zero dispute about any of that. And so the court took judicial notice. The court also then ensured the court took judicial notice. It seemed to me the court incorporated it by reference. Judge Smith, if you read the court's order, Judge Thompson did both. She did both things. She talked both about judicial notice and incorporation by reference. This is the first time I've really looked into incorporation by reference very strongly because it seemed to me that's where she went. Now, I was going to say I don't know whether she can get it by incorporation by reference. If she doesn't go to judicial notice, I'm not sure she can't get the documents in. Well, they're similar doctrines. They are. But they're different. I agree. But these webpages bear no relation to the webpages referenced in the complaint other than they were published on the same website. Well, I don't – I don't – I would push back on bear no relation. I think the – Well, all they do is be published on the same website. Otherwise, they don't have any reference to the same. I mean reading them both. I'm just telling you. You're correct. That's my interpretation. You are correct. So if you're not going to get to judicial notice, I don't know how you're going to get them in. That's why my question was if we don't look at any of it, I guess we're okay, given it's de novo review. Correct. If you don't look at any of it, it's okay. I would – I would say the ads, I think, are certainly judicially noticeable in this kind of case. I think if you look at the trial court's order, she did apply both analyses. The incorporation by reference doctrine is different. It's a – I agree it's a harder case to make. I don't think it's correct, respectfully, Your Honor, that these are just completely unrelated webpages. You're certainly right. There's no internal reference to those pages. But they are the homepages on Apple's website for the very service that's at issue in the case. So I don't think it's as aggressive, maybe, as the Court believes to take a – to incorporate those documents by reference, particularly where the ads are also referenced. The advertisements that the plaintiff is claiming to sue over were also referenced in the complaint. And so in those circumstances, I think a case could be made for incorporation by reference. However, I think that it is a clearly correct, not an abuse of discretion to take judicial notice of the documents here, particularly in a false advertising case. And then the last point I'll make, unless the Court has further questions, is the application of the reasonable consumer test to the fraud claims was, in our view, should also be entirely uncontroversial. There's some discussion in the papers about the Whiteside case, another Kimberly Clark case, you know, the Williams v. Gerber case that involved, you know, front of label, back of label packaging. And there was an interesting discussion in the Whiteside case about this sort of developing jurisprudence over how do you deal with prominent statements on the front of a package that are then qualified by statements elsewhere on the back of a package. And the application of the reasonable consumer test here seems entirely uncontroversial. To the extent there is an application of that front of the label, back of the label jurisprudence to our case, the plaintiffs are asking the Court to focus only on the back of the label, only look at these contract terms, don't look at the advertisements and the home page for the service that the plaintiff is, the plaintiff appellant is suing over.  You mentioned the Whiteside case. The Whiteside case indicates that dismissals of cases, the pleading stage, should be rare. What about this case makes it rare? It would fit within the Whiteside dimension. Because just like in the Whiteside case itself, there is no reasonable consumer, much less a substantial percentage of the targeted consumers for this kind of product. Would read that what the plaintiffs call the price list, which is, again, no dispute that is part of the contract. It's in the record at page 144. There's an image of it. It says in very clear terms what price you pay for each tier of iCloud storage, just like with a cell phone plan. It doesn't say 200 gigabytes of additional storage. It says this plan is, has iCloud with 200 gigabytes of storage, with 200 gigabytes of storage. That language can't reasonably be interpreted, much less by a substantial percentage of consumers, to mean what you really get is 55 or 205 gigabytes of storage. And so, you know, the Whiteside case itself found that some of the packaging at issue the packaging that had an asterisk next to the language at issue on the front, that those were not misleading to reasonable consumers because it would indicate to a consumer, hey, go look at the back of the package where there's this clarifying language. And so, yes, it's rare, but I think this is the kind of case, really an archetypal kind of case, where the language is so clear that the court should be able to make these kinds of adjudications on the pleadings. If you were writing this contract, De Novo, would you make any changes to clarify what the public would understand? If so, what? I don't, I mean, you could always add language to make things even more clear. I think the language here is very clear. I don't know what else could be added. I'm sure I could come up with something. I don't think any additional language is needed. We're not the ones reading terms into the agreement. So I guess I would push back, Your Honor. I'm sure I could think of something, but I don't think that should be the proper standard for interpreting an agreement. Would it be possible to make something more clear? That's going to be true in virtually every case. And so I think the test ought to be, you know, is this, is the interpretation the parties are proposing, is the agreement ambiguous, and is the interpretation, you know, in accordance with the Court's precedents, a reasonable one under the circumstances? And your view of Rule 9b and its application to this case is what? Rule 9b absolutely applies to the fraud claims, Your Honor. You mentioned that we should look outside the contract, at the homepage and the ads. So the ads that we're talking about are the homepages for the iCloud website. Well, let me ask you. Plaintiff's counsel pointed out that the contract says you only look at the contract itself. Right. So that goes back to this analysis that the courts have developed over front of the label, back of the label. Because what the plaintiffs are saying is, don't look at the homepage for iCloud. Don't look at the ads. Just look, because there's an integrated term in the contract, just look at that term. Well, my question is, does the contract say that you only look at the contract? The contract is an integrated agreement. It would be news to me, as a counsel who represents defendants in California and has so for 25 years, that a company could avoid any criticism or analysis of its advertising by putting in a term of service agreement, this is an integrated contract. That would be entirely new law, and it would be fundamentally inconsistent with this Court's precedent, both in the Williams v. Gerber case and in the Whitesides case that came out just last year. So I hope that answers, Judge, your question. Unless there are further questions. I have no other questions. I think not. All right. Very well. Thank you. All right. Mr. Ketriel, you've got 3 minutes and 32 seconds to do a wonderful job. Thank you, Your Honor. I'd like to pick up where my colleague left off, and Judge Reyes's question. Doesn't the contract tell you don't look anywhere else? It does. And it doesn't do that simply by way of an integration clause, although it does certainly contain that. That's how it ends. It starts the contract with the following language. All capitalized. The only part of the contract Apple chose to capitalize in full. This legal agreement between you and Apple governs your use of the iCloud product, software, services, and websites. It is important that you read and understand the following terms. By clicking agree, you are agreeing that these terms will apply if you choose to access or use the service. And what they come here and tell you is, never mind what this says. Let's look at the ads because they were on the website, too. And I think Judge Reyes's question, at least as I interpret it to me, is doesn't that in effect eviscerate the integration clause or the parole evidence rule by saying, well, if you were to consider the contract despite this language, if you were to go and scour the website and then come upon these ads, then you'd understand what, you're supposed to understand what they mean. Well, just a minute, just a minute. The language I read to you, which I'm interpreting and which I hope to interpret, doesn't end there. It goes on by saying, by you upgrading to the iCloud subscription service for more storage and additional features, Apple will automatically charge on a recurring basis the fee for the plan you choose. Correct. For details about the plan and pricing, please visit the website. In my book, that's the only reason you could have an attachment to your complaint and the only reason they argue for having what they're trying to put in because of the attachment to your complaint is that last language that says, please visit the website, which gives it a louder version, if you will. So, Your Honor, no, I think that website is part of the contract. Well, I understand that it is. What they're trying to do is introduce other webpages. And that's what we dispute. Their ads are not that website. That website is the price list. And we agree fully, in fact, that's part of our case. That website says how much more storage you will get. That's how we interpret it. Because the only thing that's available for sale is the more storage. Let me see if I can circle back for a moment. Actually, before I do that, Your Honor raised the question of judicial notice versus Doctrine of Incorporation by reference. The mere fact that something is publicly available, you've held in the COJA case, is not full stop the end of the inquiry for judicial notice. Because if the document is still subject to multiple interpretations, then it's improper to take judicial notice, though it be publicly available. Well, but you don't dispute the accuracy of the webpages. We don't dispute the accuracy. They're relevant to the claims about the public-facing comments about the cloud storage. We've taken judicial notice of websites and images in other consumer protection cases. Right. Why wouldn't there be judicial notice here? You would not take judicial notice here because the interpretation of what these ads, the extra ads that they're putting forth, is not undisputed. It doesn't say here that by choosing iCloud Plus, which is a different plan, you automatically give back the iCloud you were already allocated for free. It says nothing of the kind. It does say you upgrade, but it tells you why you upgrade, because you get extra features that don't come with the 5 gigabytes of free storage you already have. So the evil that we're contesting against is that by taking it as judicial notice, it doesn't allow us to put on any contrary evidence. It allows Apple, in its motion to dismiss, to say you have to consider this and you have to believe it full stop and not allow them an opportunity to put on any contrary evidence. We agree that maybe outside material comes in. The district court has to rule whether it's ambiguous, unambiguous, whether there's fraud. But both sides get to put that in. By taking it under judicial notice or incorporation by reference, it cuts the inquiry unfairly. And that's what you held in Kimberly-Clark, in Koja, in Brady, in the Trader Joe's case, and so on. Last sentence I would say here. We began this argument here and in the district court by pointing to Section 1C. Section 1C says your account is automatically allocated 5 gigabytes of storage capacity. Additional storage is available for purchase. What is the meaning of additional storage? Our dictionary definition, we cited various sources, says in addition to, extra, supplementary. All right. We will let you go over time. Let me ask my colleagues whether it either has additional questions. I got a real quick question, a very short answer. Sure. What additional evidence would you put in? You talk about judicial notice. You didn't have a chance for. Sure. What additional evidence is there? Well, if we're talking strictly about the breach, it depends if we're talking about the breach of contract or the consumer protection. Just breach of contract. The breach of contract cases. I think that California law sets forth the tools that apply in interpreting contracts. And those could include customs in the industry. So we have ads from other providers. How they phrase it when they want to achieve the result that Apple does. We have the Google contracts, which we could have put in. We didn't think we had to because we think it's an unambiguous integrated contract. But the result that they achieve, there's a way to do it. Your Honor asked Mr. Powers, how would he draft the contract today if he were doing it de novo? Well, here's an example. If they want to achieve the result that they now espouse, Google told us how to do it. Their language is different than Google's, and yet they want to achieve that same result, which would render the words of one contract superfluous. So that would be one example. Okay. Thank you. Thanks to both counsel for your argument. The case of Bodenberg v. Apple is submitted.
judges: SMITH, SMITH, Rayes